### Richmond

CHARLES H. SEILHEIMER, JR.

V.

PERCY G. MELVILLE

October 15, 1982.

Record No. 800730.

Present: Carrico, C.J., Cochran, Poff, Thompson, Stephenson and Russell, JJ.

*Fred C. Alexander, Jr. (Boothe, Prichard & Dudley,* on briefs), for appellant.

*Daniel M. O'Connell, Jr. (O'Connell, Mayhugh & Payne,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

This action for real estate commissions presents a single issue on appeal: whether a plaintiff's rebuttal witness, testifying to matters which defendant had denied, was erroneously permitted to give impeachment testimony as to matters entirely collateral to the issues at trial. In the context in which the evidence was offered, we find no error in its admission.

Charles H. Seilheimer, Jr., a licensed real estate broker, became holder of a territorial franchise from Previews, Inc., a multi-state brokerage firm. He discussed with Percy G. Melville and Marshall Wallach, licensed real estate salesmen, an arrangement whereby they would act as his agents, divide commissions, and contribute to office expenses. This arrangement was never reduced to writing. Disagreement between Seilheimer and Melville as to its terms led to this litigation. Nevertheless, the three began operations under Previews' name and succeeded in closing a series of five sales in 1975 and 1976, which yielded commissions amounting to approximately $150,000.00. Melville contended that he should have received one-third of this amount, less his agreed contribution to office expenses, and claimed $47,083.33 as his share. Seilheimer contended that a part of the commissions was due to Previews, Inc., and that a larger deduction should be made for overhead. Melville received only $25,312.50 and brought this action for the difference, $21,770.83. His demand was later amended to $19,687.50.

The largest commission was received in connection with the sale of "Island View Farm" on March 1, 1976 to a German purchaser for a price of $1,329,331.83, plus additional consideration for personal property. Melville charged that Seilheimer had paid a part of the commission received on this sale to Friedrich Reventlow, a

citizen of West Germany, who, Seilheimer thought, had interested the purchaser in the property. Seilheimer consistently denied making any payment to Reventlow. Such a division of commissions would have been improper because Reventlow lacked a Virginia broker's or salesman's license. The matter was thoroughly pursued in discovery. At trial, Seilheimer conceded that he had wanted to make the payment, but on cross-examination insisted that it was never actually made.

Melville then called as a rebuttal witness Frank J. Quayle, a broker with Roy Wheeler Realty Company, the agent for the seller in the Island View transaction. Over Seilheimer's objection, Quayle was permitted to testify that in conversations just before settlement, Seilheimer had informed him that the commission, which was to be divided equally between the purchaser's agents and the seller's agents, had been increased by agreement from ten to eleven percent and that the additional one percent was earmarked for payment to Reventlow since he could "continue to produce additional business and it was very important for him to receive the fee." Quayle determined, after consulting counsel, that such a payment could not legally be made. He said that he informed Seilheimer of this in a telephone conversation the evening before settlement, but that Seilheimer responded that he was going to get the one percent fee to Reventlow in Germany "discreetly." Quayle also quoted Seilheimer as saying that if Previews prevented the payment to Reventlow, the one percent fee would be divided between the seller's and purchaser's agents. Quayle testified that his firm never received its half of the one percent fee.

The jury returned a verdict in Melville's favor in the amount of $12,187.49. In moving to set it aside, Seilheimer argued that Quayle's testimony was not proper rebuttal, that it did not impeach his testimony, that it dealt with matters entirely collateral to the issues at trial, and that its sole purpose was to prejudice the jury against him by attempting to show, by innuendo, that he had committed prior "bad acts." The motion was denied and judgment was entered on the verdict. Seilheimer's appeal presents the same contention.

 It is true, as Seilheimer argues,

No question respecting any fact irrelevant to the issue can be put to a witness on cross-examination for the mere purpose of impeaching his credit by contradicting him. And if any

such question be inadvertently put and answered the answer of the witness will be conclusive . . . . he cannot be asked as to any collateral independent fact merely with a view to contradict him afterwards by calling another witness. [Citations omitted.]

*Allen* v. *Commonwealth,* 122 Va. 834, 842, 94 S.E. 783, 785-86 (1918). "The test as to whether a matter is material or collateral, in the matter of impeachment of a witness, is whether or not the cross-examining party would be entitled to prove it in support of his case." *Id.* at 842, 94 S.E. at 786.

A fact is wholly collateral to the main issue if the fact cannot be used in evidence for any purpose other than for contradiction. "Evidence of collateral facts, *from which no fair inferences can be drawn tending to throw light upon the particular fact under investigation,* is properly excluded for the reason that such evidence tends to draw the minds of the jury away from the point in issue, to excite prejudice and mislead them." [Emphasis added.] *Spurlin, Administratrix* v. *Richardson,* 203 Va. 984, 990, 128 S.E.2d 273, 278 (1962). Conversely, if the evidence tends, even slightly, to throw light upon the main fact in issue, it is not collateral, but probative. Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is admissible. *Stamper* v. *Commonwealth,* 220 Va. 260, 269, 257 S.E.2d 808, 815 (1979). *See also Railway Company* v. *Golladay,* 164 Va. 292, 309, 180 S.E. 400, 407 (1935). As Professor Friend points out, the "collateral facts" rule is purely a question of relevancy. C. Friend, *The Law of Evidence in Virginia,* §137 (1977). *See Hemming* v. *Hutchinson,* 221 Va. 1143, 1146, 277 S.E.2d 230, 233 (1981).

The challenged evidence meets the foregoing tests. It is relevant to prove the main fact in issue: the amount of commissions due Melville. Seilheimer had introduced in evidence a copy of the seller's settlement statement on the Island View sale, which showed that the commission paid to Previews, the purchaser's agent, amounted to $60,000.00. Melville contended that Previews' share was in fact $67,500.00, one-third of which was due to him. Quayle's testimony concerning the increase of one percent in the commission tended to corroborate Melville's version. The jury had the problem of determining whether the commission was ten percent, as Seilheimer contended, or eleven percent as Melville and

Quayle stated. The trial judge, in his discretion, had the responsibility of weighing the probative value of the evidence on this main issue against its possible prejudicial effect in showing Seilheimer's desire to make an illegal payment to an unlicensed agent. The possibility of such prejudice was remote, since Seilheimer had readily admitted, on direct examination, his desire to make the payment. There was no abuse of discretion in admitting the evidence.

For the reasons stated, the judgment is

*Affirmed.*