## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Wayne Lowell Smith

v.

William V. Ellis

January 29, 1991

Case No. L-88-523

By JUDGE WILLIAM H. LEDBETTER, JR.

This personal injury action was tried with a jury on December 18, 1990, resulting in a verdict for the plaintiff in the amount of $75,000.00. The defendant and the uninsured motorist carrier filed post-verdict motions and those motions were argued on January 22, 1991. This opinion addresses those motions.

### Collateral Facts

In response to a question on direct examination, the plaintiff said that he had not undergone a surgical procedure recommended by his physician because he could not afford it. No objection was made to the question or the response. On cross-examination, counsel for the defen-

dant sought to delve into that matter by posing questions to the plaintiff about his wife's health care benefits which had paid, or may have paid, other medical bills incurred by the plaintiff. Counsel for the plaintiff objected. The court refused to permit the line of inquiry.

The defendant seems to concede that health care benefits and payments ordinarily would not be a proper subject of questioning. Evidence of payment of medical and similar expenses of an injured party, especially when paid from a collateral source, is generally excluded. The reason for the rule is that the subject is not relevant to any issue that the jury must decide. It is settled that evidence of collateral facts are generally inadmissible because it tends to draw away the minds of the jury from the point in issue and to incite prejudice and mislead them. 7B M.J., *Evidence*, § 42 *et seq.*; Friend, *The Law of Evidence* (3rd Ed.) § 137. Here, however, the defendant argues that he should have been allowed to pursue the subject because of the plaintiff's earlier comment. The court disagrees.

A litigant's right to cross-examine a witness does not extend to collateral and irrelevant matters. A witness cannot be impeached by evidence of a collateral fact which is not relevant to the issues of the trial, even though to some extent it has a bearing on the issue of credibility. *Maynard v. Commonwealth*, 10 Va. App. 15 (1990); *see also Seilheimer v. Melville*, 224 Va. 323 (1982). The test as to whether a matter is material or collateral is whether or not the cross-examining party would be entitled to prove it in support of his case. *Allen v. Commonwealth*, 122 Va. 834 (1922).

Professor Friend indicates that matters testified to on direct examination are never collateral and may be the subject of impeachment on cross-examination even if the subject is immaterial to the point in issue. *See* Friend, *supra*, § 32. Nevertheless, assuming that Professor Friend is correct and that the "collateral facts" rule does not apply with full force in such instances, it is clear that those inquiries are subject to the sound discretion of the court.

In fact, even relevant evidence may be excluded where its admission would delay the proceedings without adding anything of significance to the case. Friend,

*supra*, § 138. Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, waste of time, confusion of the issues, or needless presentation of misleading facts. *See Seilheimer v. Melville, supra.*

The need to balance relevance, if any, against elements of prejudice, consumption of time, and distraction is well illustrated in this case. The plaintiff's remark that he could not "afford" a particular surgical procedure was objectionable but not objected to. Instead, the defendant allowed this wholly irrelevant question to be asked and answered for the obvious purpose of impeaching the plaintiff's credibility on cross-examination with extraneous and potentially prejudicial material. If the court had permitted the cross-examination, what would have been the follow-up question if the plaintiff had conceded that his wife's benefits would have provided some indemnification but he still could not "afford" the surgery? Would counsel have taken the next logical step and pursued an entire line of questioning about the extent of those benefits and what the plaintiff could and could not "afford"? Suppose the plaintiff had denied that his wife's benefits covered any of the costs of the particular surgery. Would the defendant then have produced other independent evidence of the extent of coverage including, perhaps, the policy itself? If the policy were produced, would it have required judicial interpretation? In any of these scenarios, the jury would have been invited upon a frolic that had no bearing on the issues, the sole purpose of which was to contradict, or attempt to contradict, a single irrelevant remark made by the plaintiff on direct examination.

Further, the jury was instructed regarding those things that it could consider in awarding damages if it found for the plaintiff, and it was instructed not to base its verdict upon sympathy. Under those instructions, the jury was precluded from considering the plaintiff's ability or inability to "afford" medical procedures in reaching its decision on liability or in assessing damages.

### Pre-Existing Condition

The defendant claims that the court erroneously gave an instruction on aggravation of a pre-existing con-

dition (Instruction 21) over his objection. This was error, he argues, because there was no testimony that the plaintiff's pre-existing condition was aggravated or that treatment was made more difficult as a result of the accident.

The instruction given was identical to the standard form instruction in the Virginia Model Jury Instructions -- Civil § 3.030. The defendant does not deny that the instruction as given is an accurate statement of the principle of law; rather, he argues that it has no application to the facts of this case.

At the hearing on the post-verdict motions, counsel for the defendant cited selected excerpts from the transcript of Dr. Leo Van Herpe's trial testimony. These quotations, he argues, support his position that Dr. Van Herpe never said that the injury sustained by the plaintiff aggravated a pre-existing condition or accelerated the symptoms associated with that condition or made treatment of the condition more difficult. Upon a review of the entire testimony, however, it is clear that Dr. Van Herpe said all of those things and expressed a medical opinion about each of them.

In sum, Dr. Van Herpe testified that (1) the plaintiff suffered from Blount's disease, a congenital bowing of the leg unrelated to the accident; (2) he sustained an injury, a severe tear in the anterior cruciate ligament of the left knee, in the accident; (3) the torn ligament aggravated the condition of the knee and leg otherwise created by the disease; (4) the torn ligament, and the plaintiff's consequent weight gain from lack of exercise, adversely affected medical treatment for the condition; and (5) the plaintiff's symptoms were accelerated.

The dispositive question is not whether the torn ligament aggravated the *disease*, but whether the torn ligament aggravated the *pre-existing condition* originally created or caused by the disease. Through the testimony of Dr. Van Herpe, the plaintiff presented a jury issue on that point. The jury apparently resolved the issue in favor of the plaintiff.

One takes the plaintiff as he finds him. Thus, the tortfeasor is liable for the aggravation of any pre-existing condition but not for any pre-existing disabilities. *Ragsdale v. Jones*, 202 Va. 278 (1960). Because there was credible evidence that the plaintiff's pre-existing condi-

tion was aggravated by the injury, and made more difficult to treat as a result of the injury, the instruction was proper.

*Interest*

Neither party tendered a proposed verdict form. At the conclusion of the case, the court prepared a verdict form which included a provision for interest. Before sending the form to the jury, the trial judge showed it to counsel. Counsel for the defendant questioned the provision for interest. The parties agreed that the figure "8%" should be inserted as the amount of interest to be awarded, if any; the date from which interest would run was left blank. The jury returned a verdict for $75,000.00 plus interest at 8% from the date of the accident, October 18, 1986.

Virginia Code § 8.01-382 provides that "in any action at law" the verdict of the jury "may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." This statute, as amended, allows prejudgment interest in the discretion of the trial court or jury. Interest is not an element of damages but a statutory award for delay in the payment of money due. Unliquidated claims, such as cases containing legal disputes in personal injury actions, are not excluded from the reach of the statute. *Beale v. King*, 204 Va. 443 (1963).

Therefore, it was proper for the court to submit the issue of an award of prejudgment interest to the jury.

Next, the defendant contends that the court drafted the verdict form in a way that "suggested to the jury that prejudgment interest was a given" and was not drafted "in conformity with the applicable statute."

At no time during the trial or at the hearing on the post-verdict motions did counsel for the defendant suggest how the verdict form should have been drafted "in conformity with the applicable statute." The verdict form prepared by the trial judge and sent to the jury contained nothing but blanks *except* that counsel *requested* that the court insert "8%" in the blank provided for the amount of interest. Thus, any suggestiveness in the verdict form was invited by counsel and was not the trial judge's form as originally prepared. In any event, the form did

not peremptorily direct the jury to allow prejudgment interest, cf. *Washington & Old Dominion Ry. v. Westinghouse*, 120 Va. 620 (1917), and the form was not improperly suggestive nor was it inconsistent with the discretion for allowance of prejudgment interest provided in § 8.01-382.

Finally, the defendant asks the court to set aside the prejudgment interest because it is excessive and unconscionable under the facts of this case.

The interest allowed by the jury in this case, running from the date of the accident, amounts to more than $20,000.00. Undeniably, it is an unusual amount of interest on an unliquidated claim.

Prior to the enactment of statutes permitting prejudgment interest, such interest could be recovered only when the defendant had promised to pay it. In tort actions, no interest was recoverable. Gradually, courts began to discard the common law rule. Whenever a claim for damages existed, if it represented a loss of pecuniary value ascertainable with reasonable certainty, interest was recoverable. Still, if the claim was for unliquidated damages and involved non-pecuniary elements such as pain and suffering, interest was not allowed. One writer pointed out that to permit an award of damages in such sum as would fully compensate the plaintiff, and then to supplement that award with interest, would be to add damages to damages. Burdick, *The Laws of Torts*, § 204 (1926). Upon adoption of legislation, the courts turned to interpreting the statutes rather than promulgating rules regarding interest. Nevertheless, the history of developments regarding prejudgment interest are helpful in interpreting the statutes and in determining whether discretion is abused.

In this case, most of the damages were for anticipated future medicals, lessening of earning capacity, and pain and suffering. The plaintiff's evidence included claims for lost wages and past medical expenses, i.e., actual pecuniary loss, but those claims represented a small percentage of the award of damages. Prejudgment interest on non-pecuniary damages, clearly permitted now by Section 8.01-382, is at odds with thinking that interest should be allowed to make the plaintiff whole.

Further, in this case the award was not made until four years after the injuries were sustained. The claim was not prosecuted until October, 1988, and the uninsured

motorist carrier was not brought into the case until the summer of 1990.

Considering all of these factors, the court is of the opinion that the jury abused its discretion in fixing interest on the award of damages running from the date of the accident. Such a large amount of interest is excessive, as a matter of law, and must be set aside.

### Conclusion

The defendant's motion to set aside the judgment (grounds 1, 2, 3, and 4) is denied. The motion to set aside the provision for interest (grounds 5 and 6) is granted. Interest will be allowed at the judgment rate from December 18, 1990, the date that the verdict was rendered.