COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Bumgardner
Argued at Salem, Virginia


JAMES EDWARD JOHNSON, S/K/A
 JAMES EDWARDS JOHNSON, JR.
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 3023-00-3      JUDGE RUDOLPH BUMGARDNER, III
                                       FEBRUARY 26, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                     Robert M. D. Turk, Judge

           Joseph Graham Painter, Jr.; Scott Weber
           (Painter Weber, on briefs), for appellant.

           Kathleen B. Martin, Assistant Attorney
           General (Randolph A. Beales, Attorney
           General, on brief), for appellee.


     A jury convicted James Edward Johnson of attempted rape,

forcible sodomy, and animate object penetration.  On appeal, he

contends the trial court erred in excluding an overheard

statement offered to contradict a witness by prior inconsistent

statement.  Finding no error, we affirm.

     The thirteen-year-old victim testified the defendant

sexually assaulted her when she spent the night with a friend,

Shamika Bishop.  Shamika lived with her mother (Teresa Bishop),

her mother's boyfriend (the defendant), and her brother (Chris

Bishop).  On cross-examination, the defendant asked the victim
_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

if she had ever made the statement to Shamika Bishop, "our little secret."  The victim denied making that statement.  Shamika testified and corroborated the victim's testimony.  On cross-examination, the defendant asked her if she had ever said, "this is our little secret, we've got to keep it."  She denied making that statement.

The defense called Teresa Ford as a witness.  She was a friend and neighbor of the Bishops and had overheard Shamika and the victim talking on the telephone after the incident.  When asked to repeat what she had heard, the Commonwealth objected because it was hearsay.  The defendant proffered that Ford heard Shamika say: "it's our secret we can't tell nobody," and "well he's out of the house now, he can't spend no more of our money."  She only heard Shamika's part of the conversation and did not know the topic of the girls' conversation.

The trial court sustained the objection and excluded the statements.  It acknowledged that the defendant could impeach the witness, "but it has to with something relevant."  Noting that no evidence indicated the girls were talking about the incident, the trial court ruled the defendant needed to establish "some link that they were actually talking about this particular incident."  Defense counsel conceded he had not laid a good foundation and responded, "taken by themselves . . . [the statements] may not mean anything and I agree with your Honor as

to relevance."  Shortly thereafter, the defendant excused Ford as a witness.

The statement that Ford overheard was offered to impeach Shamika by showing she made a statement inconsistent with her testimony at trial.  When the defendant asked Shamika if she had ever said "our little secret," he raised the issue for the first time on cross-examination.  Whether he could use extrinsic evidence to contradict her denial depended on whether the question elicited a collateral fact.

> "No question respecting any fact irrelevant to the issue can be put to a witness on cross-examination for the mere purpose of impeaching his credit by contradicting him. And if any such question be inadvertently put and answered the answer of the witness will be conclusive . . . . he cannot be asked as to any collateral independent fact merely with a view to contradict him afterwards by calling another witness."

Seilheimer v. Melville, 224 Va. 323, 326-27, 295 S.E.2d 896, 898 (1982) (quoting Allen v. Commonwealth, 122 Va. 834, 842, 94 S.E. 783, 785-86 (1918)).

If a question calls for a collateral fact, the cross-examiner must take the witness' answer because "[e]xtrinsic evidence of collateral statements is not admissible."  A Guide to Evidence in Virginia Rule 613(a)(ii), 63 (2001); Charles E. Friend, The Law of Evidence in Virginia § 4-3(f), 122-23 (5th ed. 1999).  The rule, known as the

"collateral facts" rule, is purely a matter of relevance. Seilheimer, 224 Va. at 327, 295 S.E.2d at 898.

Whether Shamika had ever uttered the words "our little secret" bore no relation to the issues at trial. It was no more relevant than whether she had ever recited the alphabet. The fact that Teresa Ford heard Shamika make the statement "our little secret" had no purpose other than for contradiction. At the time the trial court ruled on the objection, the fact was irrelevant. When the trial court made its ruling, it clearly indicated the statement could become relevant if other evidence established the topic of the girls' conversation. The defendant acquiesced in the ruling.[1]

Later in the trial, Chris Bishop testified that he overheard a telephone conversation between the victim and Shamika. The defendant concedes he did not overhear the same conversation Teresa Ford overheard. Chris Bishop testified the victim said, "Jimmy didn't do nothing to her and that was her and Shamika's secret." That testimony impeached the victim by a prior inconsistent statement.

---

[1] The defendant maintains on brief that the statement Ford overheard provided exculpatory evidence by bolstering his theory that Shamika and the victim fabricated their testimony against the defendant. Disregarding the fact the testimony was hearsay if offered as substantive evidence, it was not admissible as substantive evidence because it was not relevant when proffered. Boggs v. Commonwealth, 199 Va. 478, 486, 100 S.E.2d 766, 772 (1957) (irrelevant evidence is not admissible).

- 4 -

Chris Bishop's testimony also served to give essential definition to the phrase "our little secret" when uttered by the two girls. That distinctive definition gave meaning to what Teresa Ford overheard and connected it to the issues at trial. However, the defendant never suggested that the trial court reconsider its earlier ruling and never recalled Teresa Ford to tender her testimony in light of Chris Bishop's subsequent testimony.

The defendant called Teresa Bishop, who also overheard conversations between the victim and Shamika. Teresa Bishop testified that she believed the girls' allegations against the defendant until she heard two conversations between the victim and Shamika.[2] The defendant never proffered the content of the conversation. As with Chris Bishop's testimony, the defendant never suggested that the conversations Teresa Bishop overheard supplied facts that made Teresa Ford's earlier testimony relevant.

When the defendant offered the testimony of Teresa Ford, he offered extrinsic evidence of a collateral fact. The trial court did not err in excluding evidence not relevant to the issues at trial. The admissibility of evidence is left to the

_____

[2] In his reply brief, the defendant contends for the first time that the conversation Teresa Bishop overheard impeached the girls' credibility. We do not consider this argument for the first time on appeal. Rule 5A:18.

sound discretion of the trial court, and its "ruling will not be disturbed on appeal absent an abuse of discretion." Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986) (citation omitted). Accordingly, we affirm the convictions.

Affirmed.

Elder, J., concurring in the result.

I would hold that the defendant acquiesced in the trial court's refusal to allow Teresa Ford to testify about two statements she overheard Shamika Bishop make to the teenaged victim. Thus, I would hold that the defendant waived any objection to the exclusion of this testimony, and I would affirm the convictions without reaching the merits of the appeal.

The defendant's theory of the case was that he did not commit the charged acts and that the victim and Shamika lied about his actions. Defense counsel asserted in his opening statement the evidence would establish that the victim and Shamika talked about the lie as "their little secret[]" and discussed "[getting the defendant] out of [the Bishops' residence]" when Shamika's mother, Teresa Bishop, "threw [him] out" following the victim's report of sexual abuse.

When defense counsel cross-examined the victim at trial, she denied that Shamika made the statement to her over the telephone that "this is our little secret." Shamika likewise denied telling the victim over the telephone that "this is our little secret, we've got to keep it." Shamika also denied telling the victim, "[W]ell, we got [the defendant] out of the house, he's not going to take any [of] my Mom's money any more."

When defense counsel attempted to establish through the testimony of Teresa Ford, the Bishops' neighbor, that Shamika

- 7 -

had, in fact, made these statements to the victim, the Commonwealth objected, and the following exchange took place outside the presence of the jury:

> THE COURT:  I guess the concern I've got[, defense counsel,] is even if [Shamika] made those statements[,] what were those statements in reference to, I mean there's been no testimony that [Shamika and the victim] were discussing this particular incident at the time that [Teresa Ford] overheard, and I don't know whether [Ford] can state that or not because obviously I don't think she heard [the victim] on the other end of the phone.
>
> [DEFENSE COUNSEL]:  I understand . . . .  I have done a poor job establishing [a] foundation . . . .
>
> . . . .
>
> THE COURT:  . . . [Y]ou can impeach . . . , but it has to be with something relevant[,] and I don't think that you can establish the relevancy unless there is some link that they were actually discussing this particular incident at the time those two statements were made.
>
> [DEFENSE COUNSEL]:  I can ask [Ford] the questions[,] Your Honor, maybe I can establish, I think I can establish relevance.

Defense counsel proffered through examination of Ford that Ford heard Shamika say, during a telephone conversation with the victim, "[it's] our secret[,] we can't tell nobody," and "well[,] he's out of our house now, he can't spend no more of our money."  Defense counsel then inquired if "[Ford] hear[d]

- 8 -

anything in that conversation that led [her] to believe [the victim and Shamika] were talking about their allegations [against the defendant]," saying "I'm trying to see if there was a link that why . . . these statements stand out in her mind, I mean taken by themselves they may not mean anything and I agree with Your Honor as to relevance." (Emphasis added). Thus, defense counsel agreed, whether correctly or erroneously, that Ford's testimony about Shamika's statements was irrelevant and inadmissible unless Ford could provide specific testimony connecting the statements to the victim's allegations of sexual abuse.

The court then questioned Ford about whether she could "hear [the victim] on the other line" during that conversation or whether she could "hear what [Shamika and the victim] were talking about." Ford indicated that she heard only the statements Shamika had made, to which Ford already had testified. Defense counsel then said, "I think I have a witness that can," referring to a witness who could testify about the victim's responses to Shamika's statements in order to give them the context he and the trial court believed was necessary to establish their relevance. The trial court then sustained the Commonwealth's objection to the admissibility of Ford's testimony without opposition from defense counsel, who said he would "not go into those statements." Thus, assuming without

- 9 -

deciding that the ruling was erroneous, defendant's counsel acquiesced in that ruling.  See, e.g., Spruill v. Commonwealth, 221 Va. 475, 478-79, 271 S.E.2d 419, 421 (1980) (holding defendant "acquiesced in the court's [ruling that a specific clinical psychologist was not qualified to give the opinion proffered] by responding, 'Very well' to the court's statement and by saying he would not 'pursue' the issue but would call the psychiatrist as a witness" in lieu of the psychologist).

The defendant subsequently offered testimony from Shamika's brother, Chris Bishop, about a telephone conversation he overheard between Shamika and the victim.  In that conversation, the victim told Shamika "that [the defendant] didn't do nothing to her and that was her and Shamika's secret."  Chris testified that he was listening on an extension and heard the statements and responses of both girls.  The evidence established that this conversation could not have been the one Ford overheard, because it took place on a telephone at the Bishop residence, whereas the conversation Ford overheard took place on a telephone at Ford's residence.  Thus, the defendant did not attempt to use Chris's testimony to provide a foundation for Ford's previously excluded testimony.

The defendant also offered testimony from Shamika's mother, Teresa Bishop.  She testified that she believed Shamika's and the victim's allegations "until [she] heard a conversation on

the telephone," and she subsequently testified that she overheard her daughter's conversation "on two different occasions."  Defense counsel did not attempt to elicit any further details about the two conversations, such as what Shamika said or to whom Shamika was speaking.  Defense counsel also did not attempt to use Teresa Bishop's testimony to provide a foundation for Ford's previously excluded testimony.

The defendant offered no additional testimony about Shamika's and the victim's conversations and made no additional attempt to present to the jury Ford's testimony about Shamika's statements.

For these reasons, I would hold that the defendant acquiesced in the trial court's ruling excluding Ford's testimony about Shamika's statements, and I would affirm the defendant's convictions without reaching the merits of the appeal.  Therefore, I concur in the result.

Benton, J., dissenting.

The evidence proved that James Johnson lived in the residence of Teresa Bishop, his romantic friend, and that Bishop's daughter was the friend of the teenage girl who made the complaint of sexual abuse. On the night in question, the teenager stayed overnight at Bishop's residence and slept in the living room with Bishop's daughter on a sofa that was converted into a bed. The morning after the alleged incident, Bishop awoke both girls. Bishop testified the girls "were just fine, talking, laughing in the car" when she took them to school that morning. They made no complaint to her.

On direct examination, the teenager testified that after Johnson was arrested, she had an in-person conversation with Bishop's daughter. On cross-examination, the teenager admitted she also had telephone conversations "maybe two times" with Bishop's daughter after Johnson had been arrested. The teenager denied discussing with Bishop's daughter in those telephone conversations that "this is our little secret."

Bishop's daughter testified on cross-examination that she talked to the teenager every day by telephone for eight months after Johnson's arrest. She denied saying to the teenager in a telephone conversation that "this is our little secret." Although she admitted talking to the teenager from the telephone in Teresa Ford's residence when her brother and Ford were

-

present, she denied saying to the teenager that they had gotten Johnson out of her mother's house and that Johnson would not take any more of her mother's money.

Johnson's theory of the case was that the girls concocted their story of sexual abuse. He testified that he had not touched either the teenager or her friend in any sexual way. He acknowledged passing through the living room where they slept when he came home at 3:00 a.m. He testified, however, that the passage in the living room of the mobile home is so narrow that he likely bumped the converted sofa bed as he passed through the room. In her testimony, the teenager confirmed that when the sofa opens to a bed the passage is "about two and a half feet."

Johnson's witness, Teresa Ford, resides next to Bishop's residence. She testified that Bishop's daughter often came to her residence to receive telephone calls from the teenager or to make telephone calls to the teenager. Ford testified that on one occasion, when the teenager called and spoke to Bishop's daughter, she heard Bishop's daughter's conversation. The prosecutor objected when Ford sought to testify that Bishop's daughter said in the telephone conversation, "its our secret we can't tell nobody" and "he's out of our house now he can't spend no more of our money." The prosecutor argued that the testimony was hearsay. Johnson contended, however, that he was entitled to impeach the teenager and Bishop's daughter by Ford's

-

testimony.  The trial judge sustained the prosecutor's objection.

The Commonwealth argued at trial that the testimony was hearsay.  Now on appeal, the Commonwealth abandons that claim and argues, for the first time, only that Johnson failed to lay a proper foundation for the testimony.[3]  Because the Commonwealth made no objection at trial that the proper foundation was not laid, we are limited to the issue presented at trial and ruled on by the judge, i.e., whether the evidence was hearsay.  See Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963); Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313-14 (1992).

Notwithstanding the prosecutor's failure to assert this issue at trial, the evidence clearly established that the foundation was sufficient and proper.  The Commonwealth acknowledges the following rule applies to this case:

---

[3] The Commonwealth also does not contend that Johnson's attorney acquiesced in the trial judge's refusal to allow Ford to testify about the statements she overheard.  Indeed, the record establishes that when Johnson's attorney said that he "agree[d] with [the judge] as to relevance," he was making a proffer of Ford's testimony.  He made that statement as a response to the prosecutor's further objection that Ford's proffered testimony should be limited because "that calls for speculation."  After that exchange, the trial judge questioned Ford and then ruled that "[b]ased upon the Commonwealth's objection I will sustain the objection."  The trial judge certainly did not consider Johnson's attorney's response to the prosecutor's objection to be an acquiescence in a comment the judge made before he heard the proffer.  In view of the manner in which the record developed, we have no basis to preclude this issue by invoking Rule 5A:18.

-

> It is fundamental to the right of cross-examination that a witness who is not a party to the case on trial may be impeached by prior statements made by the witness which are inconsistent with his present testimony, provided a foundation is first laid by calling his attention to the statement and then questioning him about it before it is introduced in evidence.

Pugh v. Commonwealth, 233 Va. 369, 374, 355 S.E.2d 591, 594 (1987).  When testimony is offered for this purpose, it is not hearsay.  Id. at 374, 355 S.E.2d at 595.

The rejected testimony of Ford was offered for the purpose of impeachment.  Johnson's attorney questioned both girls and gave them an opportunity to admit or deny the statements.  Clearly, Ford's testimony was admissible to impeach the testimony of both girls so as to assist the jury in reaching a determination founded on truth.

The majority opinion rules, however, that Ford's testimony impeaches the witness by a collateral fact.  This issue, which also was not raised by the Commonwealth at trial or on this appeal, is not properly before us.  Id.

Moreover, Ford's testimony does not raise a collateral fact.

> A fact is wholly collateral to the main issue if the fact cannot be used in evidence for any purpose other than for contradiction.  "Evidence of collateral facts, from which no fair inferences can be drawn tending to throw light upon the particular fact under investigation, is properly excluded for the reason that such evidence tends to draw the minds of the jury

-

away from the point in issue, to excite prejudice and mislead them." . . . <u>Spurlin, Administratrix v. Richardson</u>, 203 Va. 984, 990, 128 S.E.2d 273, 278 (1962). Conversely, if the evidence tends, even slightly, to throw light upon the main fact in issue, it is not collateral, but probative. Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is admissible. <u>Stamper v. Commonwealth</u>, 220 Va. 260, 269, 257 S.E.2d 808, 815 (1979). <u>See also Railway Company v. Golladay</u>, 164 Va. 292, 309, 180 S.E. 400, 407 (1935). As Professor Friend points out, the "collateral facts" rule is purely a question of relevancy. C. Friend, <u>The Law of Evidence in Virginia</u>, § 137 (1977). <u>See Hemming v. Hutchinson</u>, 221 Va. 1143, 1146, 277 S.E.2d 230, 233 (1981).

<u>Seilheimer v. Melville</u>, 224 Va. 323, 327, 295 S.E.2d 896, 898 (1982).

Johnson's theory is that the girls fabricated their testimony to cause him to be removed from Bishop's residence. On direct examination by the prosecutor, the teenager implied she had limited contact with Bishop's daughter after Johnson's arrest. The questions posed to the teenager and Bishop's daughter were probative of fabrication and, thus, cannot be excluded under the doctrine of collateral facts. Ford's testimony that Bishop's daughter told the teenager that "its our secret we can't tell nobody" and "he's out of our house now, he can't spend no more of our money" clearly is not collateral to the issue in the case. The exposure of fabrication and collusion by witnesses is designed to "assist the finder of fact

-

in its quest to ascertain the truth." Motley v. Tarmac Am., Inc., 258 Va. 98, 102, 516 S.E.2d 7, 9 (1999). Proof that two witnesses colluded to lie about the facts of a case is always germane. "There is no gainsaying that arriving at the truth is a fundamental goal of our legal system." United States v. Havens, 446 U.S. 620, 626 (1980).

The Commonwealth further argues that in any event, the exclusion of Ford's testimony was harmless error. It points to the testimony of Johnson's witness, Chris Bishop, who is Bishop's minor son. He was on the telephone when the teenager and Bishop's daughter talked, and he heard their conversation. He testified the teenager said to Bishop's daughter that Johnson "didn't do nothing to her and that it was [the teenager's] and [Bishop's daughter's] secret."

Non-constitutional error is harmless only "[w]hen it plainly appears from the record and the evidence given at the trial" that the error did not affect the jury's sentence. Code § 8.01-678.

> But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand.

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001).

The erroneous exclusion of evidence raises concerns about the jury's truth finding function.  We have said that the admission of "[o]ther evidence of a disputed fact, standing alone, does not establish that an error is harmless."  Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992). Ford's testimony, if believed by the jury, tended to impeach the testimony of both girls.  Although the jury apparently considered and rejected the testimony of Chris Bishop, we cannot say that the jury would have rejected Ford's testimony.  Ford's testimony was less susceptible to being viewed, as Bishop's son's might have been, as subject to the influence of Bishop, who was Johnson's romantic friend.  Moreover, her testimony was qualitatively different and more significant than the evidence that was admitted.  Ford's testimony intrinsically establishes both impeachment and a motive bearing on the impeached testimony.  Error is not harmless when "the disputed testimony may well have affected the jury's decision."  Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).

I would hold that the trial judge erred in sustaining the prosecutor's objection that the evidence was hearsay. Accordingly, I would reverse the convictions and remand for a new trial.

-