PRESENT: All the Justices

COMMONWEALTH OF VIRGINIA

v. Record No. 230945

PATRICK AUSTIN CAROLINO

OPINION BY
JUSTICE CLEO E. POWELL
DECEMBER 12, 2024

FROM THE COURT OF APPEALS OF VIRGINIA

Following a bench trial, Patrick Austin Carolino was convicted of strangulation pursuant to Code § 18.2-51.6. After hearing the matter en banc, a majority of the Court of Appeals reversed the judgment, holding that the trial court erred in admitting collateral propensity evidence for the sole purpose of attacking Carolino's credibility in violation of *McGowan v. Commonwealth*, 274 Va. 689 (2007) ("*McGowan*"). Concluding that Carolino failed to preserve his argument that the evidence constituted improper impeachment on a collateral matter, we reverse.

## I. BACKGROUND

### A. The Commonwealth's Evidence

At trial, the evidence established that Carolino and Hannah Ford were in a romantic relationship from April 2018 to May 2019. They lived together through February 2019, and their relationship was "on again/off again" during the final three months.

On April 15, 2019, Ford and Carolino went out to dinner and began to argue. They drove to Carolino's apartment and continued arguing in his bedroom. Carolino put his arm around Ford's neck, pressed his other hand on the back of her head, and pushed her head toward the ground. Ford testified that, although the incident did not last long and she did not lose

consciousness, she could not breathe for 15-20 seconds, felt pressure in her head, and experienced spotted vision. Ford recalled that Carolino was angry during the incident and said, "[Do] you see what it feels like to die." Ford feared that she would "pass out or die" if Carolino did not relieve the pressure.

After the incident, Ford spent the night with Carolino. Ford did not report the incident to the police immediately[1] because she still had feelings for Carolino, did not want to get him in trouble, and was "scared to report anything."[2] The next morning, Ford had burst blood vessels in her eyes and she photographed her injuries. The photographs were admitted into evidence. Ford's neck was tender and sore, it hurt to swallow, and her voice was affected. Ford went to work and disclosed the incident to her supervisor, who testified that Ford was "visibly distraught" and her eyes were red "like the blood vessels had been popped." The supervisor stated that their conversation prompted her to contact a security company to advise that someone dangerous might come to the store.

Robert Mendez, Carolino's roommate, testified that on the morning after the incident, Ford's eyes "looked as if they were allergies or bloodshot, maybe a broken blood vessel." When Mendez asked Ford about her eyes, she told him that she had allergies. Mendez also testified that, around the general time of the incident, Carolino told him that if Ford were placed in a chokehold, she would know how to respond in self-defense.

_____

[1] On cross-examination, Ford testified that she called Carolino's probation officer twice in May 2019 to report that Carolino had used drugs, but did not report the strangulation over the phone. On May 17, 2019, Ford met with Carolino's probation officer in-person and told her that Carolino was "violent" and she "was scared." The same day, Ford reported the strangulation to the police.

[2] Carolino and Ford continued to date each other until May 2019.

2

Jennifer Knowlton, a sexual assault nurse examiner,[3] qualified as an expert in the signs and symptoms of strangulation. Knowlton testified that some of the common signs and symptoms of strangulation include petechial and subconjunctival hemorrhages in the eye, pain or soreness in the neck and throat, difficulty swallowing, and trouble speaking. Knowlton acknowledged that ruptured blood vessels in the eye can also be caused by reactions to medication, excessive coughing, straining, and rubbing one's eye to alleviate allergies.

### B. Carolino's Evidence and Cross-examination

After the Commonwealth rested, Carolino made a motion to strike, arguing that Ford's testimony was unreliable because she waited a month to report the incident to the police and was biased because Carolino was dating other women. The trial court denied the motion.

Carolino testified that, on the night in question, he and Ford argued about Carolino dating other women. Carolino denied that there was a physical fight between them and expressly denied choking Ford. Carolino claimed that Ford continued to contact him after that night and tried to interfere with his other relationships.

On cross-examination, the Commonwealth asked:

> Q: Ms. Ford – have you ever – you said you didn't choke her. Have you ever been physical with her?
>
> A: Aggressively physical, no. Sexually physical, sure. Yes.
>
> Q. Okay. Never been aggressively physical.

Defense counsel objected that the line of questioning was beyond the scope of direct and "going into prior bad acts." The trial court stated that it had not "heard enough" yet to rule on the objection. When the Commonwealth stated that it wanted to show Carolino a series of

---

[3] Knowlton did not treat Ford for her injuries.

photographs, which depicted dark and widespread bruising on Ford's buttocks arising from an incident in which Carolino had allegedly used a belt to whip Ford, defense counsel objected and argued that the photos were not relevant because the belt-whipping incident had occurred a year prior to the instant offense and Ford previously stated that the belt-whipping was consensual. Defense counsel also objected to the evidence as prior bad acts, propensity evidence, and outside the scope of direct. Without seeing the photographs, the trial court overruled the objections and permitted the Commonwealth to present the photographs. Carolino explained that the photographs documented an incident when Ford "begged" him to whip her, and he did. The Commonwealth offered the photographs into evidence and defense counsel again objected to them as not relevant, proof of "a prior bad act from a year prior to this incident," and propensity evidence. The trial court asked the Commonwealth whether the photographs represented Carolino being physical with Ford and the Commonwealth responded affirmatively. The trial court admitted the photographs over the objections. Carolino reiterated that he "never aggressively assaulted [Ford]. I've never – I've never done anything to [Ford] that she didn't ask me to do or did not want me to do."

### C. The Commonwealth's Rebuttal Evidence

The Commonwealth called Ford as a rebuttal witness.[4] She testified that the photographs depicted an incident in the summer of 2018 when Carolino beat her with a belt. Ford explained that Carolino was "angry with [her] about having sex with someone else." Ford testified that she "allowed" Carolino to beat her and explained: "I was intimidated by him because he expressed to me repeatedly that he wanted to hurt me. And I just was – I – I didn't want to have to wait and see when he was going to do it."

---

[4] Defense counsel did not object during Ford's rebuttal testimony.

The trial court asked Ford whether the belt-whipping was consensual, and she stated it was

not.  When the trial court asked why Ford told the police that she "allowed" Carolino to beat her,

Ford explained that in

> the days prior and the day of, [Carolino] had been threatening me
> and telling me that he wanted to hurt me.  And I pretty much
> conceded and said, "Well, if you want to, then – then do what you
> have to do.  It's going [to] make you feel better and stop telling me
> that you're going to hurt me."

## D.  The Trial Court's Ruling

The trial court found Carolino guilty of strangulation.  In explaining its ruling, the trial

court explicitly referenced the belt-whipping evidence:

> But everyone being under oath and facing the penalties of perjury
> here, I have the defendant saying it was – it was pretty – to the
> court, a pretty remarkable statement on cross-examination that he
> had never been physical with her. And then I see Commonwealth's
> Exhibit 2, which is not a subtle antithesis of that. It's not subtle by
> any means. And no one could – could be – there are no subtleties
> which could explain the difference in those statements. He says it
> was something she asked him to do in a sex act. She says it wasn't.
> It was punishment for some act that she did. *I guess that's where
> the complexities of the relationships come in that [the
> Commonwealth] talked about.* Inexplicable circumstances where
> they can't be disputed. He was physical with her. There was just no
> – *it really had an impact as fact as credibility goes.* I think the
> evidence is sufficient I can – that I can find beyond a reasonable
> doubt that the defendant did commit the crime of strangulation and
> I'm going to find him guilty.

(emphases added).

## E.  The Court of Appeals Proceedings

On appeal, Carolino challenged the admission of the belt-whipping evidence and the

sufficiency of the evidence.  Relevant to this appeal, Carolino's first assignment of error stated:

> The trial court erred in allowing the testimony and evidence
> regarding a prior act between the parties that occurred almost a
> year before the alleged incident at trial inasmuch as the prior act

5

was previously described as consensual, was not relevant to the trial, was prejudicial, and was inadmissible as propensity evidence contrary to the rules of evidence.

Relying on *McGowan*, Carolino argued that the Commonwealth could not use belt-whipping evidence in its case-in-chief and impermissibly introduced it through cross-examination.

A divided three-judge panel of the Court of Appeals concluded that the trial court erred in admitting collateral propensity evidence of the belt-whipping incident and reversed and remanded for a new trial. *Carolino v. Commonwealth*, Record No. 1270-21-1, 2022 Va. App. LEXIS 672 (2022). The Court of Appeals subsequently granted the Commonwealth's petition for en banc review.

Upon en banc review, the Court of Appeals reversed the trial court's evidentiary ruling and remanded the case for a new trial. *Carolino v. Commonwealth*, 79 Va. App. 170 (2023) (en banc). The en banc majority held that the trial court erred in "admitting collateral propensity evidence for the sole purpose of attacking Carolino's credibility" contrary to the holding in *McGowan*.[5] *Id.* at 188. The majority explained that the Commonwealth improperly impeached Carolino's denial of being physically aggressive toward Ford with extrinsic photographs and rebuttal witness testimony. *Id.* Although the Commonwealth argued for the first time on appeal that the belt-whipping evidence was admissible under multiple exceptions to the prior bad acts rule — including to show the relationship between the parties and the conduct or attitude of the accused toward the victim — the majority declined to apply the right-result-wrong-reason doctrine. *Id.* at 191. The majority explained that the trial court did not consider any other grounds for admissibility or make any factual findings regarding the relevance of the evidence

---

[5] In *McGowan*, the Court held that when a defendant is cross-examined on a collateral matter, the prosecution must accept the answer provided and cannot use extrinsic evidence to contradict the defendant. 274 Va. at 695.

aside from credibility, and it did not balance the probative value of the belt-whipping evidence against its prejudicial impact. *Id.* at 193-96. The majority concluded that the admission of the belt-whipping evidence was not harmless error because the factfinder relied on it for an impermissible purpose — namely, that the belt-whipping evidence tipped the scales in its credibility determination. *Id.* at 201-02.

Finally, in response to the dissent, the Court of Appeals majority concluded that Carolino "adequately preserved his objection to the Commonwealth's improper and prejudicial use of collateral propensity evidence to rebut Carolino's testimony." *Id.* at 202. The majority determined that the objections based on remoteness, relevance, and being beyond the scope of direct meant "collateral," and the objections based on propensity and prior bad acts encompassed the prejudicial nature of the evidence. *Id.* at 202-03.

The en banc dissent concluded that the Carolino's argument that the belt-whipping evidence constituted improper impeachment on a collateral matter was waived under Rules 5A:18 and 5A:20(c). *Id.* at 206-09 (Fulton, J., dissenting). The dissent observed that Carolino's objections at trial were limited to contentions that the challenged evidence was beyond the scope of direct, irrelevant, and constituted propensity evidence. *Id.* at 208. The dissent further noted that, since Carolino never objected based on the grounds set forth in *McGowan*, the trial court did not have an opportunity to intelligently rule on this precise issue. *Id.* Additionally, improper impeachment on a collateral matter was not encompassed within Carolino's assignment of error because the assignment mirrored his objections at trial. *Id.* at 209.

On the merits, the en banc dissent concluded that the belt-whipping evidence was not collateral because it was relevant to show the relationship between the parties, the conduct or attitude of the accused towards the victim, and that the strangulation was not consensual. *Id.* at

7

211-13. The dissent opined that the belt-whipping incident, which occurred less than a year prior to the strangulation, was not so remote in time as to negate its probative value. *Id.* at 213. And though the photographs were graphic, they were not so inflammatory as to outweigh the probative value because they depicted the severity of the conduct. *Id.* at 214.

## II.  ANALYSIS

The Commonwealth argues that the Court of Appeals erred when it determined that Carolino's argument regarding improper impeachment on a collateral matter was preserved for appellate review because he did not raise this specific objection at trial. On the merits, the Commonwealth contends that the Court of Appeals erred in holding that the belt-whipping evidence constituted improper impeachment on a collateral matter because it was admissible in the Commonwealth's case-in-chief under multiple exceptions to the prior bad acts rule. Carolino argues that his argument was preserved because his objection that the belt-whipping evidence was remote, not relevant, and beyond the scope of direct meant that it was collateral, and his objection based on propensity and prior bad acts grounds alerted the trial court to the prejudicial nature of the evidence. On the merits, Carolino posits that the Court of Appeals properly determined that the belt-whipping evidence was improper impeachment on a collateral matter because the Commonwealth offered it solely to impeach his credibility and did not establish that an exception to the prior bad acts rule applied.

In this case, the en banc majority of the Court of Appeals determined that Carolino adequately preserved his challenge to the admissibility of the belt-whipping evidence as improper impeachment on a collateral matter. We review the Court of Appeals' interpretation of our Rules de novo. *Hannah v. Commonwealth*, 303 Va. 106, 124 (2024).

8

## A. Rule 5A:18

Rule 5A:18 provides that "no ruling of the trial court . . . will be considered as a basis for reversal unless an objection was made with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "Rule 5A:18 requires a litigant to make timely and specific objections." *Brown v. Commonwealth*, 279 Va. 210, 217 (2010). The purpose of the contemporaneous objection rule is to alert opposing counsel to the issue and to provide the trial court an opportunity to intelligently rule on the issue. *Id.*; *Banks v. Commonwealth*, 67 Va. App. 273, 285 (2017). "Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019).

At various points during cross-examination, Carolino made three specific objections regarding the belt-whipping evidence. The Commonwealth asked whether Carolino "had ever been physical with [Ford]."[6] Without objection, Carolino responded that he had not been physically aggressive with Ford, but had been sexually aggressive with her. When the Commonwealth clarified "[n]ever been aggressively physical?," defense counsel objected that the question (1) was beyond the scope of direct, which was specific to the night of the strangulation, and (2) constituted "going into prior bad acts." Next, when the Commonwealth attempted to show Carolino photographs of Ford's injuries from the belt-whipping incident, defense counsel objected that the photographs (1) were not relevant because the belt-whipping was consensual and occurred a year prior to the strangulation, (2) amounted to "prior bad acts" as propensity evidence, and (3) were outside the scope of direct. The trial court overruled these objections. Third, when the Commonwealth showed Carolino the photographs and questioned

---

[6] On direct examination, Carolino denied choking Ford on the night in question.

him about them, defense counsel objected solely on relevancy grounds. Finally, when the Commonwealth moved the photographs into evidence, defense counsel again objected that the photographs (1) were not relevant because the belt-whipping was consensual, and (2) amounted to evidence of a "prior bad act from a year prior to this incident." The trial court admitted the photographs and noted defense counsel's objections.

The collateral fact rule is derived from case law rather than the rules of evidence. *See, e.g., McGowan*, 274 Va. at 695; *Stottlemyer v. Ghramm*, 268 Va. 7, 12 (2004); *Seilheimer v. Melville*, 224 Va. 323, 327 (1982). To determine whether a matter is material or collateral when used for the purpose of impeachment, the court considers "whether the cross-examining party would be entitled to prove it in support of his case." *McGowan*, 274 Va. at 695 (citing *Stottlemyer*, 268 Va. at 12); *Seilheimer*, 224 Va. at 327. The rule set forth in *McGowan* provides that "[w]hen cross-examining a defendant for the purpose of credibility, the cross-examiner is bound by the answer given, and cannot introduce evidence to otherwise contradict the witness." 274 Va. at 695. Therefore, *McGowan* goes to the *scope* of impeachment. *Cf. Pearce v. Commonwealth*, 53 Va. App. 113, 121-23 (2008).

Carolino's objections did not address impeachment, much less the scope of impeachment. Indeed, defense counsel never referenced the rule set forth in *McGowan*. Rather, as stated, Carolino's specific objections were limited to the belt-whipping evidence as being: (1) beyond the scope of direct, (2) irrelevant, and (3) prior bad acts or propensity evidence. The trial court considered and overruled these specific objections. However, none of these objections would have alerted the trial court to an argument that it was necessary to apply the *McGowan* rule.

First, cross-examination is generally limited to the scope of the direct examination and credibility issues. Va. R. Evid. 2:611(b). Here, defense counsel specifically articulated that he

10

thought that the belt-whipping evidence was beyond the scope of the direct examination because that examination was limited to the night of the strangulation, and the belt-whipping incident occurred almost a year beforehand. Therefore, this objection and explanation were not sufficient to alert the trial court judge to a claim that it was necessary to apply the *McGowan* rule.

Second, a generalized relevance objection is not specific enough to indicate to the trial court that the actual objection is improper impeachment on a collateral matter. Evidence is relevant is if it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. Relevant substantive evidence goes to the truth of the matter asserted, whereas impeachment evidence is used to show contradiction or to attack a witness's credibility, or both. *See* Kent Sinclair, The Law of Evidence in Virginia § 1-3, 14 (8th ed. 2024) ("'Substantive evidence' is evidence which tends to prove or disprove a fact in issue. 'Impeaching evidence,' by contrast, is offered *not* to prove or disprove the fact itself but to discredit the testimony of a witness who has already testified. Such evidence bears only on the credibility of the witness, and not directly upon the existence or non-existence of a particular fact."). A witness's credibility becomes relevant when they take the stand, as Carolino did here. *See McCarter v. Commonwealth*, 38 Va. App. 502, 506 (2002) (citing *Smith v. Commonwealth*, 212 Va. 675, 676 (1972)); Sinclair, The Law of Evidence in Virginia § 12-1. Although the collateral fact rule is intertwined with relevancy, *see* Sinclair, The Law of Evidence in Virginia § 6-5, the *McGowan* decision specifically deals with the scope of impeachment. Therefore, in the context presented here, Carolino's generalized relevance objection focusing on the timing and the consensual nature of the belt-whipping was not specific enough to alert the trial court that the defense was asking the trial court to apply the *McGowan* rule.

11

Third, evidence of prior bad acts is generally inadmissible to prove that the defendant committed the charged offense unless the evidence falls within a recognized exception. Va. R. Evid. 2:404(b). Before the evidence of a prior bad act is admitted, the trial court must be able to conclude that the legitimate probative value of the evidence is not outweighed by any incidental prejudice. Rule 2:404(b). A generalized prior bad acts objection, without more, would thus normally raise only the issue of the lack of a cognizable exception, or a claim that the prior bad act evidence was more prejudicial than probative. Additionally, because prior bad acts are a form of substantive evidence, an objection on this basis would not alert the trial court to a claim that an impeachment rule was being invoked.

On appeal, both Carolino and the en banc majority "put a different twist on [the] question that is at odds with the question presented to the trial court." *Commonwealth v. Shifflett*, 257 Va. 33, 44 (1999). Because Carolino failed to specifically object to the belt-whipping evidence as improper impeachment on a collateral matter, the trial court did not have an opportunity to intelligently rule on this ground. Thus, Carolino's argument is waived pursuant to Rule 5A:18.

B. Rule 5A:20

Rule 5A:20(c) provides that "the brief must list, clearly and concisely. . . the specific errors in the rulings below. . . upon which the party intends to rely." Carolino's relevant assignment of error in the Court of Appeals stated:

> The trial court erred in allowing the testimony and evidence
> regarding the prior act between the parties that occurred almost a
> year before the alleged incident at trial inasmuch as the prior act
> was previously described as consensual, was not relevant to the
> trial, was prejudicial, and was inadmissible as propensity evidence
> contrary to the rules of evidence.

Carolino's assignment of error mirrored the specific objections made and ruled upon at trial. *See supra* Part II(A). Carolino's argument on brief — and relied upon by the en banc majority —

that the belt-whipping evidence constituted improper impeachment on a collateral matter is not encompassed by his assignment of error. *See Banks*, 67 Va. App. at 289-90 (noting that the "court is limited to reviewing the assignments of error presented by the litigant" and will "not consider issues touched upon by the appellant's argument but not encompassed in his assignment of error"). Therefore, this argument was waived pursuant to Rule 5A:20(c).

### III. CONCLUSION

For the reasons stated herein, we reverse and vacate the judgment of the Court of Appeals, and enter final judgment reinstating Carolino's conviction for strangulation pursuant to Code § 18.2-51.6.

*Reversed, vacated,*
*and final judgment.*