# Richmond.

## ALLEN V. COMMONWEALTH.

### January 24, 1918.

1. LARCENY—*Variance.*—Accused was convicted of grand larceny under an indictment containing a count charging him with the larceny of a check. In the count all the material parts of the check, the names of the drawer and drawee, the amount thereof, its date, and the bank upon which it was drawn, fully appeared. The number of the insurance policy, in settlement of which the check was given, was stated as 4660037, whereas the true number was 46600371. Having craved oyer of the check, the accused moved to quash the count, because of this variance.

   *Held:* That the court properly overruled this motion on the ground that the variance was immaterial.

2. INDICTMENT AND INFORMATION—*Joinder of Offenses—Alleging Distinct Felonies in Same Indictment.*—Distinct felonies may be charged in different counts in the same indictment, and the same felony may be charged in different ways in several counts, so as to conform to the evidence as it may develop at the trial.

3. INDICTMENT AND INFORMATION—*Several Offenses Charged in Different Counts of the Indictment—Election by Commonwealth.*—Where in cases of felony several offenses are charged, in sundry counts of the same indictment, if the court sees that the charges are so distinct that to try them together would confound the prisoner, or distract the attention of the jury, it will require the Commonwealth's attorney to select which count he will try first.

4. LARCENY—*Indictment and Information—Ownership Alleged in Different Persons.*—The ownership of the alleged stolen property may be averred to be in different persons in different counts of the indictment.

5. LARCENY—*Indictment and Information—Distinct Felonies—Bill of Particulars.*—An indictment for larceny charged in one count the larceny of a check for a certain amount, the property of another person, under section 3708, Code of 1904, and in another count the larceny of that amount of money, the

property of the same person. The accused moved the court to require the Commonwealth's attorney to give a bill of particulars, stating whether he proposed to try the accused for larceny at common law, or for larceny of the check.

*Held:* That the court properly overruled this motion. Each count of the indictment charged the accused with grand larceny, and with sufficient particularity. No bill of particulars could have been properly required which would have given him any more specific information of the crime with which he was charged.

6. LARCENY—*Evidence.*—In a trial for the larceny of a check given by an insurance company in settlement of a policy, accused claimed to have paid the proceeds of the check to an under-taker for burial expenses of the assured. A witness for the Commonwealth, an officer of the insurance company, over the objection of accused, was allowed to testify that the insurance company had never made any requirement as to funeral expenses of the assured. The trial court had instructed the jury that, if they believed that the accused had in good faith paid to the undertaker the amount which he claimed for the burial of the assured, then the accused was not guilty.

*Held:* That there was no error in overruling accused's objection to this testimony, although a clause of the policy in evidence provided that the insurance company might pay the amount due under the policy to any person appearing to the company to be entitled to the same by reason of having incurred expense for the burial of the assured.

7. WITNESSES — *Impeachment —: Cross-Examination — Independent Facts.*—It is competent, in order to discredit a witness, to offer evidence attacking his character for truth and veracity. Particular independent facts, though bearing on the question of veracity, cannot, however, be put in evidence for this purpose. No question respecting any fact irrelevant to the issue can be put to a witness on cross-examination for the mere purpose of impeaching his credit by contradicting him. And if any such question be inadvertently put and answered, the answer of the witness will be conclusive.

8. WITNESSES — *Impeachment — Cross-Examination — Independent Facts—Case at Bar.*—In a trial for the larceny of a check given by an insurance company in settlement of a policy, accused claimed to have paid the proceeds of the check to an undertaker for burial expenses of the assured. The under-taker testified that although the cost of burial was only $23.50, nevertheless, at the request of the accused, he made out and receipted a bill to him for $71.50, for such burial. Attorney

for the accused then asked the undertaker if it was not a fact that when his buggy had been damaged by another and the bill for its repair was $6.00, he had not asked the person repairing the buggy to raise it to $12.00, and collected the $12.00 for damages.

*Held:* That there was no error in sustaining the Commonwealth's objection to this last question.

9. WITNESSES — *Impeachment* — *Cross-Examination* — *Independent Facts.*—The test as to whether a matter is material or collateral, in the matter of impeachment of a witness, is whether or not the cross-examining party would be entitled to prove it in support of his case.

10. DOCUMENTARY EVIDENCE—*Admissibility of Books of Account.*— The admission of books of account, the entries having been made by the bookkeeper under the direction of some one familiar with the facts at or near the time of the transaction, in the usual course of business, is clearly proper and everywhere accepted.

11. INDICTMENT AND INFORMATION—*Election Between Counts.*—The first count of an indictment for larceny charged the accused with the larceny of a check for $76.70, alleged to be the property of V., who was the payee of such check; the second count charged the larceny of that amount of money belonging to the said V.; and the last two counts were identical with the first two, except that the check, which was drawn by an insurance company, as well as the money, were alleged to be the property of that company. The accused asked the court to require the Commonwealth to elect on which count of the indictment it would ask for a conviction. It appeared from the Commonwealth's evidence that there was in reality a single connected transaction, commencing with the change in the policy on the life of C., induced by the accused, so as to make the benefit payable to V., followed some fifteen months later by the death of the assured, the making out of the claim for the insurance in the name of V. by the accused, and the receipt by him of the check payable to V., its endorsement by him in the name of V., and his collection and appropriation of a large part of the money. All of the evidence submitted was pertinent to this alleged sequence of facts, and each of these facts had relation to all of the others.

*Held:* That the court properly refused to require the Commonwealth to elect.

12. INDICTMENT AND INFORMATION — *Election Between Counts.* — Compelling of an election pertains not to absolute law but to judicial discretion. Ordinarily, therefore, the decision of the

presiding judge, granting or refusing it, is not open to revision by the higher tribunal.

13. INSTRUCTIONS—*Multiplicity of Instructions.*—Where instructions given by the court at the instance of accused and the Commonwealth, fully and fairly presented every question involved in the case, the court rightly refused to add other instructions offered by the accused, the tendency of which would only have been to confuse and mislead the jury.

14. CRIMINAL LAW—*New Trial—Discretion of Court—Disqualification of Juror.*—The trial court has a discretion when a motion for a new trial is made on the ground of a statement of a juror prior to the trial showing extreme prejudice against the accused, subject to review by the appellate court, which will not be interfered with unless it appears that some injustice has been done.

Error to a judgment of the Hustings Court of the city of Petersburg.

*Affirmed.*

The opinion states the case.

*L. O. Wendenburg,* for the plaintiff in error.

*Attorney-General Jno. Garland Pollard, Assistant Attorney-General J. D. Hank, Jr.,* and *Leon M. Bazile,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The plaintiff in error was convicted of grand larceny under an indictment, the first count of which charges him with the larceny of a check for $76.70, alleged to be the property of Emma Vaughan, who was the payee of such check; the second count charges the larceny of that amount of money belonging to the said Emma Vaughan; and the last two counts were identical with the first two, except that the check, which was drawn by the Metropolitan Life Insurance Company, as well as the money, were alleged to be the property of that company.

The accused filed fourteen bills of exceptions, but as several of them cover substantially the same propositions of law, presented at different stages of the trial, it will not be necessary to discuss each of them in detail.

The first exception is that there is a variance between the check and its description in the first and third counts of the indictment. This variance consists of the omission of the last figure in the number of the policy of insurance, in settlement of which the check was given; the true number being 46600371,. whereas the number stated was 4660037. After having craved oyer of the check, the accused moved to quash the counts, because of this variance. We think the court properly overruled this motion, and that the variance was immaterial. The material parts of a check are the names of the drawer and drawee, the amount thereof, its date, and the bank upon which it is drawn. In this indictment all of these material parts of the check fully appear, as well as certain other marks upon it, clearly identifying it as the check drawn by the insurance company, the larceny of which was charged. The number of the policy appearing on the face of the check added nothing to its legal effect as a check, and was only useful to the company as a receipt for claims or demands under that particular policy. The accused could not have been surprised, prejudiced or put to any disadvantage whatever in his defense by this clerical error in drawing the indictment.

The accused also moved to quash the entire indictment because of a misjoinder, alleging that there were several distinct felonies charged in the various counts of the indictment. Even if this had been true, the motion should have been overruled, because distinct felonies may be charged in different counts. In this case, however, it was perfectly apparent that only one larceny was being charged, that the four counts referred to the same transac-

tion, and were drawn in order to meet varying phases of the proof or differences of opinion as to whether the money and check belonged to the insurance company or to Emma Vaughan, the payee. It is conceded by counsel for the plaintiff in error that the ownership of the alleged stolen property may be averred to be in different persons in different counts of the indictment, and the motion to quash was properly overruled.

In *Mitchell* v. *Commonwealth*, 93 Va. 777, 20 S. E. 892, this is said: "In cases of felony, where several offenses are charged, in sundry counts of the same indictment, if the court sees that the charges are so distinct that to try them together would confound the prisoner, or distract the attention of the jury, it will require the Commonwealth's attorney to select which count he will try first."

It is well settled that a felony may be charged in different ways in several counts, so as to conform to the evidence as it may develop at the trial. *Dowdy's Case*, 9 Gratt. (50 Va.) 727, 60 Am. Dec. 314; *Hausenfluck's Case*, 85 Va. 709, 8 S. E. 683; *Anthony* v. *Commonwealth*, 88 Va. 847, 14 S. E. 834.

The accused also moved the court to require the Commonwealth's attorney to give a bill of particulars, stating whether he proposed to try the accused for larceny at common law, or for larceny of the check under the statute (Code, sec. 3708). The court properly overruled this motion. Each count of the indictment charged the accused with grand larceny, and with sufficient particularity. No bill of particulars could have been properly required which would have given him any more specific information of the crime with which he was charged.

Another error alleged grows out of this question and answer: The witness, C. E. Hayes, who was the section head in the claim department of the Metropolitan Life Insurance Company, had identified the life insurance policy

on the life of Indiana Cates, as well as certain other documentary evidence connected therewith, and was asked this question by the Commonwealth's attorney: "From the papers in this case, Mr. Hayes, is there anything there to show that the company made any requirements about funeral expenses?" The answer was: "No, sir, not in the papers I have here." The defendant objected to this answer because the policy had this clause in it: "In case of such prior death of the insured, the company may pay the amount due under this policy to either the beneficiary named below, or to the executor or administrator, husband or wife, or any relative by blood, or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial, and the production of a receipt signed by either of said persons shall be conclusive evidence that all claims under this policy have been satisfied." The court overruled the objection and allowed the question and answer to go before the jury.

It is difficult to appreciate the force of this exception. It clearly appeared in the testimony that the company had never made any requirement as to funeral expenses of Indiana Cates, and the clause in the policy above quoted was before the jury as a part of the evidence in the case. The court also gave instructions 12 and 12-a, telling the jury that if they believed that the accused had in good faith paid to the undertaker, Epps, the amount which he claimed to have paid him out of the insurance money collected for the burial of the assured, then the accused was not guilty of the larceny of either the property of the insurance company or the property of Emma Vaughan. We find no error in this ruling.

Another error alleged is that after J. M. L. Epps, the undertaker who had buried the assured, Indiana Cates, and

who had testified that although the cost of burial charged
to the Metropolitan Life Insurance Company or to the ac-
cused was only $23.50, nevertheless, at the request of the
accused, he had made out and receipted a bill to him for
$71.50, for such burial, then for the purpose of attacking
the credibility of the witness, on cross-examination, the
attorney for the accused asked him this question: "Isn't it
a fact that you had your buggy injured by a gentleman on
the outside, and that you had it repaired at J. A. Lewis's,
and that he handed you a bill for $6.00, and you asked him
to raise it to $12.00, so that you could get the entire $12.00,
and that you did collect the $12.00, although the repairs
were only $6.00?" The Commonwealth's attorney objected
to this question, and his objection was sustained.

This is a question about which there has been great con-
trariety of decision in the English and American courts.
The doctrine most generally accepted now is that such a
question on cross-examination as to irrelevant collateral
matters tending to show immoral character, affecting the
credibility of the witness under cross-examination, should
be left to the discretion of the court in the particular case.
It is everywhere settled that the cross-examiner who asks
such a question is bound by the witness' answer and can-
not introduce evidence to contradict him.

In 40 Cyc., 2569-70, the modern authorities are collected.
Among other things, it is there said: "Neither should the
door be thrown open so wide for impeaching evidence as
to allow questions to be asked upon the pretense that the
object is impeachment when there is no reasonable ground
to expect favorable answers, or to be able to prove by di-
rect evidence that the unfavorable ones are false and the
sole tendency, if not the purpose, is to create suspicion in
the minds of the jury."

In this State it may be regarded as settled that such
questions cannot be asked. In *Uhl's Case,* 6 Gratt. (47

Va.) 706, it was held that the record of conviction of a witness of petty larceny, in another State, is not admissible to impeach the veracity of the witness. In *Langhorne's Case,* 76 Va. 1021, the court says: "It is competent, in order to discredit a witness, to offer evidence attacking his character for truth and veracity. Particular independent facts, though bearing on the question of veracity, cannot, however, be put in evidence for this purpose. 1 Whart. Law of Ev., sec. 562. No question respecting any fact irrelevant to the issue can be put to a witness on cross-examination for the mere purpose of impeaching his credit by contradicting him. And if any such question be inadvertently put and answered the answer of the witness will be conclusive. 2 Taylor on Evidence, sec. 1435. The same doctrine is enunciated by Greenleaf. He says: 'In general, the rule is that upon examination to try the credit of the witness only general questions can be put; and he cannot be asked as to any collateral independent fact merely with a view to contradict him afterwards by calling another witness. And (he says) only general questions can be put.' Greenleaf on Evidence, 455.'" In *Cutchin* v. *Roanoke,* 113 Va. 452, 74 S. E. 403; *Uhl's Case, supra,* and *Langhorne's Case, supra,* are approved.

The test as to whether a matter is material or collateral, in the matter of impeachment of a witness, is whether or not the cross-examining party would be entitled to prove it in support of his case. *State* v. *Goodwin,* 32 W. Va. 177, 9 S. E. 85; *State* v. *Sheppard,* 49 W. Va. 582, 39 S. E. 676.

The accused excepted to the introduction of testimony of the bookkeeper of Epps, the undertaker, and his account book indicating that only $23.50 had been paid by the accused for the burial expenses of Indiana Cates, such entry having been made within three or four days after the transaction by direction of Epps and in the usual course of business. There is no merit in this objection. The admis-

sion of books of account, the entries having been made by the bookkeeper under the direction of some one familiar with the facts at or near the time of the transaction, in the usual course of business, is clearly proper and everywhere accepted. 1 Elliott on Evidence, secs. 459-461; Greenleaf on Evidence (16 ed.), p. 206; Wigmore on Evidence, sec. 1555.

The accused also asked the court to require the Commonwealth to elect on which count of the indictment it would ask for a conviction, which the court refused to do.

Bishop says, that the "compelling of an election pertains not to absolute law but to judicial discretion. Ordinarily, therefore, in most of our States, the decision of the presiding judge, granting or refusing it, is not open to revision by the higher tribunal." Bishop on Cr. Procedure, Vol. 1, sec. 425.

In this case the court properly refused to require the Commonwealth to elect. It appeared from the Commonwealth's evidence that there was in reality a single connected transaction, commencing with the change in the policy on the life of Indiana Cates, induced by the accused, so as to make the benefit payable to Emma Vaughan, followed some fifteen months later by the death of the accused, the making out of the claim for the insurance in the name of Emma Vaughan by the accused, and the receipt by him of the check payable to Emma Vaughan, its endorsement by him in the name of Emma Vaughan, and his collection and appropriation of a large part of the money. All of the evidence submitted was pertinent to this alleged sequence of facts, and each of these facts had relation to all of the others. *Dowdy* v. *Commonwealth, supra; Lewis* v. *Commonwealth,* 120 Va. 875, 91 S. E. 174; *Pine and Scott* v. *Commonwealth,* 121 Va. 812; 93 S. E. 653; *Pointer* v. *United States,* 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 211.

The facts of the case, considered as upon a demurrer to

the evidence are: That the accused, who was the superintendent at Petersburg of the Metropolitan Life Insurance Company, about fifteen months before the death of Indiana Cates, procured a change in the name of the beneficiary under a policy in the company held by her, whereby Emma Vaughan, who at that time was a servant in the office of the company in Petersburg under the direction of the accused, was made the beneficiary. He wrote a letter, in effect saying, that the assured had only two children, one of whom was a fugitive from justice, and that she did not know where the other one was; that she wanted the policy made payable to Emma Vaughan, who would look after her in her feebleness. After her death, the accused made out the claim in the name of Emma Vaughan, and received the check for $76.50 from the company's office in New York, payable to Emma Vaughan. He endorsed this check in the name of Emma Vaughan, collected the money thereon, and appropriated all but $23.50 of it to his own use. It afterwards appeared that Indiana Cates had four children, one of whom lived with his wife within two doors of her residence in the city of Petersburg; that she had a daughter in Danville, and a son who had lived at McKinney, twenty-five or thirty miles south of Petersburg, for two years prior to her death, who before that time had lived in Petersburg. All of the documents which required Emma Vaughan's signature were signed with the name of Emma Vaughan by the accused, he making her mark and witnessing her signature, and thus the check was endorsed, It appeared from Emma Vaughan's testimony that she did not know Indiana Cates, or any of her children; and that she never heard of the transaction until after the money had been collected by the accused; and that she had never received any of it. It also clearly appeared that Emma Vaughan could write her own name, and that she had written it in connection with an application for insurance

in this company, which had passed through the hands of the accused. He procured the undertaker to give him a receipted bill for $71.50 for the funeral expenses of Indiana Cates, while in fact he only paid $23.50. All of these incriminating facts were denied by the accused and his witnesses. Under these circumstances, the verdict of the jury, sanctioned by the trial court is fully justified by the evidence, considered here as upon a demurrer to the evidence, and under the statute cannot be disturbed by this court.

The accused excepted to the refusal of the court to grant a number of instructions. It is sufficient to say as to these exceptions, that the court granted eight instructions at his instance, which sufficiently presented his defense, and nine at the instance of the Commonwealth, presenting the opposing view. These instructions fully and fairly presented every question involved, and the court rightly refused to add the other instructions offered by the accused, the tendency of which would only have been to confuse and mislead the jury.

After the case had been tried, the accused filed an affidavit which shows that there had been two trials of the case, and that one of the jurors who concurred in the verdict of conviction, during the pendency of the first trial, had made a statement showing extreme prejudice against the accused, to the effect that if he served as a juror he would give the accused "every year that he could," and asked the court to set aside the verdict and grant him a new trial for this reason. The question thus raised has been frequently considered by the courts.

In *Bristow's Case,* 15 Gratt. (56 Va.) 648, this is said: "To permit prisoners to avail themselves, after verdict, of pre-existing objections to the competency of jurors, as a matter of right, would not only be unreasonable, but most mischievous in its consequences. The delays in the administration of criminal justice, and the chances for the escape

of the guilty, would be greatly increased. Proper verdicts, especially in trials for grave offenses, would be continually set aside. A prisoner knowing, or wilfully remaining ignorant of the incompetency of a juror, would take the chances of a favorable verdict, with him upon the jury; and if the verdict should be adverse, would readily enough make the affidavit necessary to avoid its effect." *Poindexter's Case,* 33 Gratt. (74 Va.) 766; *Hite's Case,* 96 Va. 495, 31 S. E. 895.

In *Beck* v. *Thomson,* 31 W. Va. 459, 7 S. E. 447, 13 Am. St. Rep. 870, this is said: "A new trial will not be granted on account of the disqualification of a juror for matter that is a principal cause of challenge, which existed before he was elected and sworn as such juror, but which was unknown to the party until after the trial, and which could not have been discovered by the exercise of ordinary diligence, unless it appears from the whole case, made before the court on the motion for a new trial, that the party suffered injustice from the fact that such juror served upon the case." *Jones' Case,* 1 Leigh (28 Va.) 598; *Heath's Case,* 1 Rob. (40 Va.) 803; *Curran's Case,* 7 Gratt. (48 Va.) 623, referring to *Smith's Case,* 2 Va. Cas. (4 Va.) 6; *Poore's Case,* 2 Va. Cas. (4 Va.) 474; *Kennedy's Case,* 2 Va. Cas. (4 Va.) 510; *Brown's Case,* 2 Va. Cas. (4 Va.) 516; *Hughes' Case,* 5 Rand. (26 Va.) 655; *Jones' Case, supra,* and *Hailstock's Case,* 2 Gratt. (43 Va.) 564; *Simmons & Winch* v. *McConnell,* 86 Va. 500, 10 S. E. 838; *Reynolds* v. *Richmond, etc., R. Co.,* 92 Va. 407, 23 S. E. 770; *Doyle* v. *Commonwealth,* 100 Va. 812, 40 S. E. 925. The trial court has a discretion when such motions are presented, subject to review by this court, which will not be interfered with unless it appears that some injustice has been done. Code, sec. 3156.

For the reasons here indicated, the judgment will be affirmed.

*Affirmed.*