COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Frank and Senior Judge Bray
Argued at Chesapeake, Virginia


MICHAEL ELLERY TORY, S/K/A
 MICHAEL ELLERY TORY, SR.
                              MEMORANDUM OPINION[*] BY
v.   Record No. 0756-02-1     JUDGE ROSEMARIE ANNUNZIATA
                                    MARCH 11, 2003
COMMONWEALTH OF VIRGINIA


       FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                      John K. Moore, Judge

          Andrew G. Wiggin for appellant.

          John H. McLees, Senior Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     Michael Ellery Tory, Sr., appellant, was tried and

convicted in a bench trial, for murder, carjacking, attempted

abduction, and two counts of use of a firearm in the commission

of a felony.  He was sentenced on April 26, 1999 to serve life

plus 28 years in prison.[1]

     Tory appeals his convictions, contending the trial court

abused its discretion in admitting rebuttal testimony.  We find

no error and affirm.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] Tory's original appeal was dismissed due to counsel's
failure to perfect in a timely manner.  The present appeal is a
delayed proceeding granted to him as a remedy in a habeas corpus
proceeding.

<u>Facts</u>

On appeal, we view the evidence in the light most favorable to the Commonwealth, the party prevailing below, together with all reasonable inferences fairly deducible therefrom.  <u>Juares v. Commonwealth</u>, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).  So viewed, the evidence establishes that Michael Tory and his wife, Carla, were estranged and had been separated for approximately one year at the time of the offenses at issue.  The victim, William Burtt, was an off-duty Norfolk police officer who had befriended Carla in the course of making regular stops at the 7-Eleven store in Norfolk where Carla worked.

On the day Burtt was shot, Carla had to appear in court in a civil proceeding involving certain credit card charges.  Burtt offered to drive her to court.  Tory knew Carla was coming to court that day because they had arranged a meeting that would allow Tory to refinance the parties' marital home where Tory resided.  When Carla and Burtt met Tory at the courthouse, Carla introduced Burtt to Tory as her friend.  Carla denied Tory's suggestion that Burtt was the person with whom she had been staying.

After Carla's court appearance, she and Burtt proceeded to the magistrate's office to swear out a warrant against Tory.  Burtt had urged Carla to obtain the warrant against Tory because

-

Tory had made an earlier threat against her.[2]  Tory followed them to the magistrate's office in order to swear out a cross-warrant against Carla.  The magistrate issued emergency protective orders against both Tory and Carla.

Burtt remained in the car while Carla entered the mortgage company office where Tory subsequently met her.  Tory demanded to know where she was living and with whom.  Tory continued to press the issue and told Carla he knew she was staying with Burtt.  After Carla signed the papers needed to permit Tory to refinance the marital home, Tory followed her to Burtt's van and tried to keep her from entering it by positioning himself between her and the door.  She eventually entered the van and Tory ordered her to get out and to come with him.  When Burtt told Carla she did not have to get out of the van, Tory responded, "You're fucking my wife, and I'm supposed to listen to you?"  Tory then pulled a handgun from the back of his pants and, standing inside the open passenger door, ordered Burtt to "get [his] ass in the van."  Tory ordered Burtt to drive and directed Carla to get in the back seat of the van.

As Carla turned to get into the back seat, Burtt jumped from the van and ran between two cars, where he squatted and hid.  Tory began shooting across the interior of the van and in

---

[2] Several days before the shooting, Tory had threatened to kill Carla.

-

the direction of Burtt's flight path.  Tory walked to the front of the van, fired again, and then returned to the passenger side of the van, where he told Carla to "get the hell out," and shot through the window.  Carla jumped from the van and saw Burtt lying on the ground.

Upon arrival at the scene, Officer Edwin Bidot saw Burtt lying on the ground, a 9mm gun beside him.  Forensic evidence established that shell casings recovered from the scene were from a .380 caliber pistol.  The .380 caliber pistol was never found.  The evidence failed to show that Burtt possessed a gun other than his service revolver, a 9mm pistol, which was fully loaded when police recovered it.  Burtt's service revolver, furthermore, had neither residue on it nor an odor indicative of recent firing.[3]

Two witnesses who observed the shooting from the mortgage company's conference room window testified at trial.  Patricia Hay heard a "pop" and saw a gun in Tory's hand.  She also saw him raise his hands and demonstrated for the trial court the movement Tory made.  As she watched, she saw Burtt flee and seek cover between parked cars.  As Burtt slowly emerged from his hiding place, she saw him get hit in the head by a bullet and fall to the ground.  She never saw Burtt's hands and never saw him with a gun.  She testified Tory fired seven shots in total.

---

[3] Gunshot residue tests on the gun were negative.

-

Maureen Morris observed the shooting from the same office window. She testified that she saw Burtt run from the van to a point between two parked cars and crouch down. She saw Burtt gradually rise from his position and fall to the ground just as his head cleared the shelter provided by one of the cars. Morris and Hays ran from the office towards Burtt. The gun Morris saw on the ground near Burtt's body proved to be Burtt's service revolver.

Tory presented evidence of self-defense at trial and contended that he retrieved the gun he used in the shooting from Burtt's vehicle. In the Commonwealth's cross-examination, Tory was asked without objection whether he had ever owned a gun. He said he had not. Asked if he knew how to use one, Tory said he had used an M-16 in the military, but never a handgun. He admitted having a friend named Juan Ware, but denied ever showing him a handgun in a briefcase. On cross-examination by the defendant, Carla Tory stated that she had never known Tory to have a gun during their marriage.

In rebuttal, the Commonwealth called Juan Ware, who testified he had known Tory for ten to twelve years. Over Tory's objection, the prosecutor asked Ware if had ever seen Tory with a handgun in his possession. Ware responded affirmatively that, five or six years before trial, he saw a

-

handgun in Tory's home in an open briefcase on a table where Tory was preparing his tax returns.

## Analysis

The trial court's decision to admit evidence will not be reversed on appeal unless a clear abuse of discretion, resulting in prejudice to the defendant is established. Cheng v. Commonwealth, 240 Va. 26, 40, 393 S.E.2d 599, 606 (1990). Tory contends the trial court abused its discretion in admitting Ware's rebuttal evidence on the ground that Ware testified to a collateral fact, citing in support Bunting v. Commonwealth, 208 Va. 309, 157 S.E.2d 204 (1967), and Calhoun v. Commonwealth, 35 Va. App. 506, 546 S.E.2d 239 (2001). We disagree.

"The test for whether a matter is material or collateral, in the context of impeaching a witness, is whether or not the cross-examining party would be entitled to prove it in support of his case." Seilheimer v. Melville, 224 Va. 323, 327, 295 S.E.2d 896, 898 (1982) (citing Allen v. Commonwealth, 122 Va. 834, 842, 94 S.E 783, 786 (1913)).

> A fact is wholly collateral to the main issue if the fact cannot be used in evidence for any purpose other than for contradiction. Evidence of collateral facts, from which no fair inference can be drawn tending to throw light upon the particular fact under investigation, is properly excluded for the reason that such evidence tends to draw the minds of the jury away from the point in issue, to excite prejudice and mislead them. Conversely, if the evidence tends, even slightly, to throw

-

> light upon the main fact in issue, it is not
> collateral but probative. Every fact,
> however remote or insignificant, that tends
> to establish the probability or
> improbability of a fact in issue, is
> admissible. . . . [T]he "collateral facts"
> rule is purely a question of relevancy.

Seilheimer, 224 Va. at 327, 295 S.E.2d at 898 (citing C. Friend,

The Law of Evidence in Virginia, § 137 (1997) (internal

quotations and citations omitted)).

In the case at bar, Tory's past possession of a handgun

tended to prove his familiarity with such weapons and ability to

shoot a handgun. His past possession of a handgun further

tended to corroborate Carla's testimony that Tory brought a

weapon with him to the scene of the shooting. It further tended

to disprove Tory's testimony that he did not have a weapon on

his person as he approached the van and that he reached into the

van and took Burtt's gun in self-defense. Thus, Ware's

testimony regarding Tory's past possession of a handgun is

relevant to the issue of whether he shot Burtt in self-defense

with Burtt's own gun as he claimed, or whether he came to the

meeting with his wife with a gun in his possession.

In addition, Tory first introduced evidence that he did not

have a gun, when his counsel asked Carla Tory on

cross-examination whether she had ever known him to have a gun

during their marriage. Carla responded, "I never seen him with

one." Tory later testified that he had never owned a gun.

-

Thus, rebuttal testimony by Ware, on the same point first introduced by Tory through his cross-examination of Carla and later addressed in his own testimony, was relevant and properly admitted.

Finally, any error in admitting the rebuttal testimony was invited and harmless. Tory denied that he ever owned a handgun in response to the Commonwealth's Attorney's cross-examination. The question and answer were admitted without objection. Tory cannot introduce evidence he considers relevant and then claim the Commonwealth's contradictory evidence on the same point is improperly admitted. See Luck v. Commonwealth, 30 Va. App. 36, 46, 515 S.E.2d 325, 329 (1999) (holding that a criminal defendant may not "approbate and reprobate -- . . . invite error . . . and then to take advantage of the situation created by his own wrong" (internal quotation omitted)).[4]

Moreover, even assuming arguendo the trial court erred in admitting the rebuttal evidence, such error was harmless. When "other evidence of guilt is 'so overwhelming and the error so insignificant by comparison that the error could not have

_____

[4] Tory further argues Ware's testimony was inadmissible because it did not rebut his statement. Specifically, Tory argues the testimony that Tory had a gun in his briefcase does not tend to establish he ever owned a gun, the fact that he testified to on direct. Tory failed to raise this argument before the trial court, and it cannot be raised for the first time on appeal. Therefore, we decline to address it. See Rule 5A:18; see also Irving v. Commonwealth, 15 Va. App. 178, 179, 422 S.E.2d 471, 472 (1992) (en banc).

-

affected the verdict,'" that error is harmless, and we will not reverse the conviction. Ferguson v. Commonwealth, 16 Va. App. 9, 12, 427 S.E.2d 424, 444 (1993) (quoting Hooker v. Commonwealth, 14 Va. App. 454, 457 n.2, 418 S.E.2d 343, 345 n.2 (1992)). "An error is harmless only when it plainly appears from the record and the evidence that the error has not affected the verdict." Hooker, 14 Va. App. at 457, 418 S.E.2d at 345. "Whether an error does not affect the verdict must be determined without usurping the . . . fact-finding function." Id. (internal quotations omitted).

In the case at bar, we find the evidence against Tory so overwhelming that any error by the trial court in admitting Ware's testimony was "insignificant by comparison" and was harmless. Carla Tory testified that she, Tory and Burtt had a verbal altercation prior to the shooting and that Tory was angry with Burtt because he believed Burtt was intimately involved with Carla. She further testified that she observed Tory pull a gun from his person and begin firing into the van. Her testimony was corroborated by two eyewitnesses, whom the trial court deemed "very credible." Patricia Hay and Maureen Morris observed Burtt get shot in the head as he rose from a crouching position. Hay saw Tory holding a gun. She did not see Burtt approach the van holding a gun, as Tory claimed, and the trial court stated it did "not believe [Tory]'s testimony in this

-

regard."  Hay also testified that she did not see Tory lean into the van for a gun, and the trial court found Tory's explanation for his possession of the gun "highly improbable," stating it was "totally illogical to believe that an experienced . . . police officer like Mr. Burtt would have a [gun] apparently sliding around among some papers on the floor of his van." Finally, the physical evidence established that Burtt's service revolver had not been fired, as all the shells recovered were .380 caliber rather than 9mm.  From this evidence, it is plain that any error in admitting Ware's testimony did not affect the verdict and, therefore, was harmless.  See id. at 457, 418 S.E.2d at 345.

Accordingly, we find no error in the trial court's decision and affirm.

Affirmed.

-