COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys,[*] Freidman and White
Argued at Christiansburg, Virginia


ALVARO ANTONIO FERNANDEZ

                                                    MEMORANDUM OPINION[**] BY
v.         Record No. 1156-22-3              JUDGE KIMBERLEY SLAYTON WHITE
                                                    FEBRUARY 27, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

David B. Hargett (Hargett Law, PLC, on brief), for appellant.

Victoria Johnson, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


        A jury in the Circuit Court of Rockingham County convicted Alvaro Antonio Fernandez of

3 counts of sodomy of a child under 13 years, in violation of Code § 18.2-67.1, and 16 counts of

aggravated sexual battery of a child under 13 years, in violation of Code § 18.2-67.3.  On appeal,

he argues that (1) the trial court abused its discretion in allowing evidence of a prior sexual

encounter between Fernandez and another minor, and (2) the evidence was insufficient to

support 12 of his aggravated sexual battery convictions.[1]  For the following reasons, we affirm.

---

        [*] Judge Humphreys participated in the hearing and decision of this case prior to the
effective date of his retirement on December 31, 2023.

        [**] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

        [1] Fernandez does not challenge the sufficiency of the evidence supporting his remaining
convictions.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This standard requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

F.F. first encountered Fernandez when he was aged four or five and was adopted by Fernandez at the age of six.[2] The pair first met at an orphanage in Uruguay where Fernandez worked as director and had adopted a number of other children. In 1982, Fernandez moved to Harrisonburg, Virginia, along with a large amount of his family, to pursue his education. F.F. was one of the family members that moved to the Commonwealth. F.F. testified that he lived in Harrisonburg from ages six to ten. Although his relationship was good with Fernandez for a while, it changed at age eight when he began to be abused by his adopted father.

The first incident occurred in an upstairs bedroom of the family's home in Harrisonburg when F.F. was eight years old. Fernandez entered the room, told F.F. to remove his pants, and subsequently took off his own pants and underwear. Fernandez then put lotion between F.F.'s legs, climbed on top of F.F., and proceeded to ejaculate between F.F.'s legs. While this occurred, Fernandez touched F.F.'s body and sucked on F.F.'s neck and told him to remain still. F.F. recalls the smell of sweat from Fernandez and the smell of "mate," a popular drink in Uruguay, on his breath. Fernandez told F.F. that if he told anyone about the incident, Fernandez

---

[2] We refer to the victim by his initials to afford him privacy.

would send him back to Uruguay. F.F. testified that incidents such as this one occurred "approximately monthly" from age eight until the family moved back to Uruguay two years later when F.F. was ten years old.

While similar experiences such to the first instance of abuse continued for two years, F.F. also testified that Fernandez performed oral sex on F.F. twice and forced F.F. to perform oral sex on Fernandez once. Other times, Fernandez tried to put his penis in F.F.'s anus; F.F. testified that he "would clench with all [his] might until" Fernandez ejaculated on F.F. On another occasion, Fernandez made F.F. grab Fernandez's penis with his hand until Fernandez ejaculated. F.F. reiterated that these events happened about monthly.

F.F. moved back to Uruguay with Fernandez and several siblings in 1986, when F.F. was ten years old. When he was 13 years old, he told a pastor in Uruguay that he was afraid of being alone with Fernandez because Fernandez sexually abused him. When F.F. saw Fernandez later that day, Fernandez gave F.F. "the beating of [his] life with a belt" and told him never to tell anybody else about the abuse. F.F. returned to the United States when he was 15 years old. He did not disclose the abuse to anyone else until he told his wife around 2007. He explained that he did not tell law enforcement because "[i]t was a part of [his] life [he] wanted to leave in the past."

F.F. returned to Uruguay in 2017 with his family when Fernandez told F.F. that he was retiring and offered F.F. the leadership role in Fernandez's church. F.F. helped Fernandez with the transition but Fernandez ultimately decided in 2018 he did not want to retire and F.F. returned to the United States. F.F. testified that he was not upset about Fernandez's decision. When asked why he continued to have a relationship with Fernandez, he testified that he was grateful that Fernandez had adopted him and given him opportunities in life. F.F. told his sister

about the abuse in 2019 when he "felt very lonely and . . . needed to share it." He disclosed the abuse to the police shortly thereafter.

Fernandez's case-in-chief consisted of his own testimony and witnesses who testified primarily about Fernandez's good character. Fernandez denied ever sexually abusing F.F. and testified that he "was never expecting" to get in trouble with the law. When Fernandez's counsel asked if Fernandez ever put his penis in F.F.'s mouth, Fernandez answered that he "never did that to anyone. Never."

On cross-examination, the following exchange took place:

> Q. Mr. Fernandez, your attorney, asked you, said you didn't have any prior run-ins with the law. Your quote was, I was never expecting this to happen to me, ever. Is that what you said?
>
> A. Yes.
>
> Q. Okay. And you said I never did that to anyone when he asked you about [F.F.], is that correct?
>
> . . . .
>
> A. About using my penis in his mouth and vice versa, no.
>
> Q. Uh-huh. You referred that to anyone.
>
> A. I never have oral sex. That's the question.
>
> Q. When he asked you about the sexual acts with [F.F.], you said, and I quote, I never did that to anyone. Is that what you said?

During a sidebar out of the jury's presence, the Commonwealth argued that this line of answers "flung the door wide open" for the prosecution to question Fernandez about his other victims. The defense argued that the question answered by Fernandez was very specific to oral sex, not separate sexual acts. The trial court held that the door had been opened and allowed the prosecution to continue its line of questioning about other victims. This eventually led

Fernandez to admitting to inappropriate relations with two of his other adopted and underage sons.

The Commonwealth also called Detective Miller of the Harrisonburg Police Department to testify as to Fernandez's statements regarding an inappropriate relationship with another one of his adopted sons. Miller testified that Fernandez told him that Fernandez and his son had masturbated with each other on at least two separate occasions when the son was 16 or 17 years old.[3]

The defendant moved to strike the evidence at the conclusion of the Commonwealth's case-in-chief. The defense agreed that the victim had testified regarding three instances of sodomy and "four discrete instances" of sexual battery, but argued, "I don't know that they've gotten to nineteen" and asked "that the number of those be stricken." The Commonwealth replied that the victim had testified to "multiple instances" of abuse that occurred "monthly for a two-year period," which would be sufficient for twenty-four counts although the Commonwealth had only charged sixteen. The trial court denied the motion to strike.

At the conclusion of all of the evidence, the defendant renewed his motion to strike. At that point, the defendant argued that the trial court should strike the charges because the evidence consisted of "a bare accusation" without corroboration. The Commonwealth countered that there was no need for corroboration because sufficiency of the evidence is a jury issue that comes down to the credibility of the witness. The trial court ruled that the evidence was sufficient to create a question for the jury and denied the motion to strike. Following the jury verdict and before sentencing, the defendant moved for a new trial, arguing that the trial court erred in allowing questioning and testimony of prior bad acts.

_____

[3] Fernandez admitted making the statement but testified that he was wrong and that his son had touched Fernandez's penis and that his son was 19 at the time.

## ANALYSIS

### I. Admissibility of Evidence

"It is well-settled that '[d]ecisions regarding the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion."'" *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (alteration in original) (quoting *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"[E]vidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith." Va. R. Evid. 2:404(b). Criminal defendants do not have "the right to commit perjury," however. *McGowan v. Commonwealth*, 274 Va. 689, 695 (2007) (quoting *Harris v. New York*, 401 U.S. 222, 225 (1971)). Accordingly, when a criminal defendant makes a misleading statement to the jury about a prior bad act, he "open[s] the door" to cross-examination about the prior bad act "for the purpose of attacking [his] credibility." *Id.* (quoting *Santmier v. Commonwealth*, 217 Va. 318, 319-20 (1976)). When the matter is collateral, however, "the cross-examiner is bound by the answer given, and cannot introduce any extrinsic evidence to otherwise contradict the witness." *Id.* (citing *Allen v. Commonwealth*, 122 Va. 834, 841 (1918)). The test for whether a matter is collateral is "whether . . . the cross-examining party would be entitled to prove it in support of his case." *Id.* (alteration in original) (quoting *Stottlemyer v. Ghramm*, 268 Va. 7, 12 (2004)).

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to . . . attain the ends of justice." Rule 5A:18; see also *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 329-30 (2021) ("[T]he *precise* nature of the objection must be clear because

'[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review.'" (second and third alterations in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011))).

Fernandez argues that the trial court erred by permitting the Commonwealth to present evidence of an unrelated incident between Fernandez and one of his other adopted sons. This argument encompasses two separate issues: (1) whether the trial court abused its discretion in concluding that Fernandez "opened the door" to cross-examination about the prior sexual encounter, and (2) whether the Commonwealth was allowed to present extrinsic evidence through Detective Miller's testimony. The trial court never ruled on the second question, however. The trial court explained clearly, "I'm simply ruling at this point in time [the Commonwealth is] free to cross examine on" the collateral sexual incident. The trial court invited the attorneys to object to additional evidence, explaining "and if we run into something else that I have to rule on I'm sure you all, I mean I'm going to put it this way, anyone getting ready for this case would know that this is the s[eminal] issue in this case." The trial court never addressed whether the Commonwealth could present extrinsic evidence, and Fernandez never objected specifically to Detective Miller's testimony.

Fernandez's failure to object to Detective Miller's testimony rendered harmless any error by the trial court in allowing the Commonwealth to cross-examine Fernandez about prior bad acts. Non-constitutional error is harmless if "the error did not influence the jury or had but slight effect." *Holloman v. Commonwealth*, 65 Va. App. 147, 171 (2015) (quoting *Ramsey v. Commonwealth*, 63 Va. App. 341, 356 (2014)). "Among the circumstances in which harmless error occurs is when the improperly admitted evidence was 'merely cumulative of other, undisputed evidence.'" *Warnick v. Commonwealth*, 72 Va. App. 251, 272 (2020) (quoting *McLean v. Commonwealth*, 32 Va. App. 200, 211 (2000)).

Here, Detective Miller testified, without objection, that Fernandez admitted to mutually masturbating with one of his other adopted sons when that son was 16 or 17 years old. Additionally, Detective Miller was cross-examined by the defense and reiterated that Fernandez admitted to sexual acts with another minor. Fernandez's similar admission during cross-examination was cumulative of Detective Miller's undisputed testimony. It is merely cumulative because Fernandez, in the cross-examination, doesn't testify to anything that was not also in Detective Miller's testimony. As in Detective Miller's testimony, Fernandez admits to telling Detective Miller about the mutual masturbation with another of his adopted sons. Fernandez's similar admission during cross-examination, even assuming it was improperly admitted, was cumulative of Detective Miller's undisputed testimony. Accordingly, any error did not affect the outcome of the case and was therefore harmless.

## II. Sufficiency of Evidence

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Shahan v. Commonwealth*, 76 Va. App. 246, 258 (2022) (quoting *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021)). The question on appeal is "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Rock v. Commonwealth*, 76 Va. App. 419, 434 (2023) (quoting *Nelson v. Commonwealth*, 73 Va. App. 617, 622 (2021)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Washington v. Commonwealth*, 75 Va. App. 606, 615 (2022) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).

Fernandez was found guilty of 16 counts of aggravated sexual battery, and he now argues that the evidence was only sufficient to support four of these counts.[4]  Fernandez's argument is that F.F. only testified as to four specific instances of aggravated sexual battery.  Fernandez argues that F.F.'s testimony that "similar incidents" occurred monthly for two years was too vague to be sufficient to support his conviction of these additional counts.

The events at issue occurred more than 40 years prior to F.F.'s testimony.  Prior caselaw does not hold that F.F. needs to remember specific details about every single count.  *See Marlowe v. Commonwealth*, 2 Va. App. 619, 625-26 (1986) ("To require that a child . . . recall the exact date an event occurred in his . . . life in order to obtain a conviction would too often preclude prosecutions . . . where the victims are children and the crimes are not discovered until sometime after their commission.").  F.F. testified to "multiple instances" of abuse that occurred "monthly for a two-year period," which would be sufficient for twenty-four counts although the Commonwealth had only charged sixteen.  Along with testifying to these monthly incidents, F.F. testified to specific events.  F.F. testified to the first incident of abuse, when F.F. was eight years old, describing it in detail in the record.  F.F. also testified that Fernandez performed oral sex on F.F. twice and forced F.F. to perform oral sex on Fernandez once.  Other times, Fernandez tried to put his penis in F.F.'s anus; F.F. testified that he "would clench with all [his] might until" Fernandez ejaculated on F.F.  Finally, F.F. testified that Fernandez made F.F. grab Fernandez's penis with his hand until Fernandez ejaculated.  A reasonable jury crediting F.F.'s testimony could infer that Fernandez committed aggravated sexual battery at least 16 times in the two-year period.

---

[4] Fernandez raised this argument in a motion to strike at the close of the Commonwealth's case and later "renewed" his motion to strike after all the evidence.  We address Fernandez's argument notwithstanding the Commonwealth's argument that he failed to preserve it under Rule 5A:18.

Because Fernandez does not challenge the sufficiency of the evidence on any other ground,[5] we conclude that the evidence was sufficient to support his convictions.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*

---

[5] *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), provides Fernandez no relief. That case involved a challenge to the indictments based on due process notice and double jeopardy grounds, which is a separate issue than whether sufficient evidence supported Fernandez's convictions. Fernandez did not raise notice or double jeopardy arguments below.